UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

___

LEON ALMOND,

        Plaintiff,                  Case No. 1:18-cv-641

v.                                      Honorable Robert J. Jonker

S. CLINE et al.,

        Defendants.
_____/

OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants Houtz, Chrisman, Tory, Van Wyck, Mittelstadt, and Morrison for failure to state a claim. The Court will serve the complaint against Defendants Cline and Knaack, but only with respect to Plaintiff's claim that Defendant Cline retaliated against Plaintiff for Plaintiff's refusal to sign a reclassification request and Plaintiff's claim that Defendant Knaack conspired with Defendant Cline to accomplish that retaliation.

## Discussion

### I. Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Michigan. The events about which he complains occurred at that facility.

Plaintiff sues several officials from LCF: acting Classification Director S. Cline; Prisoner Counselor J. Knaack; Resident Unit Manager J. Houtz; Inspector T. Chrisman; Food Service Director G. Tory; Assistant Food Service Director Unknown Van Wyck; Business Manager S. E. Mittelstadt; and Deputy Warden B. Morrison.[1]

Plaintiff's allegations cover a three month period beginning December 20, 2017. On that date, a corrections officer wrote a Class II misconduct report against Plaintiff for possession of stolen property/theft. The items of property at issue were an onion and some seasoning. Plaintiff worked for the food service and was classified as a food service worker. Pending his hearing, he was laid-in and was not permitted to work.

On January 2, 2018, Plaintiff was summoned to a hearing on the misconduct charge. According to Plaintiff, the hearing officer Lieutenant LaMontagne reduced the Class II charge to a Class III charge for possession of a garden onion past the date it should have been consumed. Plaintiff received a sanction of two days' loss of privileges. Plaintiff asked the hearing officer to contact staff so Plaintiff could be reinstated to his food service job. The hearing officer agreed to contact Defendant Cline.

Plaintiff heard nothing for several days. He wrote Defendant Cline inquiring why Cline had not reinstated Plaintiff to his food service job. On January 10, 2018, Cline responded

---

[1] Plaintiff's spelling of the Defendants' names is not consistent throughout the complaint. The names used herein reflect the spellings that occur most frequently in the complaint.

with a memorandum informing Plaintiff that Cline had reclassified him and put him in the work pool for the first available opening. Plaintiff protested, arguing that Cline could not reclassify him under the circumstances.

Plaintiff's insistence that Cline could not reclassify him lies at the heart of his allegations. Plaintiff's contention is that Cline had no legitimate bases to reclassify him, at least after the misconduct was reduced to a Class III offense, unless Plaintiff himself made a request. There is good reason to doubt that Plaintiff is correct in his reading of the MDOC Classification policy.[2] But, assuming Plaintiff's view is correct for purposes of argument, he claims that a

---

[2]The MDOC policy provides:

RECLASSIFICATION

K. A prisoner may be reclassified for any number of reasons, including but not limited to the following:

1. Upon Request of the prisoner or the recommendation of any staff member. However, repeated prisoner requests which are deemed inappropriate need not be acted upon.

2. The prisoner has successfully completed an education program.

3. The prisoner has demonstrated responsibility in a work assignment for at least six months and a more desirable assignment is being requested or recommended.

4. The prisoner is not progressing in or has difficulty in adjusting to an assignment or program as documented on the Prisoner Program and Work Assignment Evaluation (CSJ-363) or Education Program Plan (CSJ-363A), as appropriate.

5. The prisoner has been terminated from an assignment due to behavior related to that assignment (e.g., misconduct, poor performance, security issues). A prisoner who has been terminated from an assignment for such behavior may not be returned to that assignment until at least 180 calendar days after the date of termination.

6. The prisoner no longer meets the criteria for being considered unemployable, as set forth in Paragraph Z.

7. Institutional needs and resources.

8. Documented Behavioral issues of the prisoner.

9. Removal or addition of STG I or STG II designation.

3

number of Defendants mounted a campaign to get him to request a classification out of food service:

1. On January 22, 2018, Defendant Knaack visited Plaintiff and told Plaintiff to sign a piece of paper to be reclassified. Plaintiff refused. Plaintiff set out to get the papers necessary to file a grievance. Before he could, Defendant Knaack again approached Plaintiff. Knaack told Plaintiff this was his last chance to be reclassified, otherwise Cline would classify Plaintiff as unemployable. Plaintiff again refused to sign.

2. Plaintiff filed a grievance against Defendants Cline and Knaack for violating the reclassification policy. On January 26, 2018, Plaintiff visited Cline at his office. Cline instructed Plaintiff to sign a reclassification request document so Cline could reclassify Plaintiff, otherwise Cline would classify Plaintiff as unemployable. Plaintiff refused. Cline told Plaintiff that Cline had terminated Plaintiff from his food service assignment. Plaintiff protested that Cline did not have the authority to do so absent a bad work evaluation from Plaintiff's supervisor. Plaintiff again grieved Cline.

3. On January 28, 2018, Plaintiff visited Defendant Van Wyck. Van Wyck told Plaintiff that Cline reported Plaintiff had been found guilty of a Class II misconduct and instructed Van Wyck to write a bad work evaluation to terminate Plaintiff from his job. When Van Wyck learned that Plaintiff had not been found guilty of a Class II misconduct, he indicated he would contact Defendant Mittelstadt and have her get Plaintiff back to work. Plaintiff grieved Cline again.

4. The next day, Plaintiff received three documents: a January 26, 2018, memorandum of classification to Mittelstadt notifying her that Plaintiff was on "OO" status; a work evaluation stating that Plaintiff was terminated from his assignment on December 21, 2017; and a MDOC itinerary dated January 29, 2018, notifying Plaintiff that he was on "OO" status.

5. The next day, Plaintiff, undaunted, raised the employment situation with Defendant Morrison. Morrison instructed Plaintiff to write to Morrison or Defendant Chrisman and one of them would take care of it. Plaintiff wrote Chrisman. Nothing happened.

6. On February 5, 2018, Plaintiff received a MDOC Assignment Waiver Form from Cline indicating that Plaintiff refused to sign it on January 26, 2018.

7. On February 6, 2018, Defendant Houtz interviewed Plaintiff regarding the grievances against Cline. At first Houtz told Plaintiff that Cline could not do what Cline

---

10. When a prisoner has been found to have engaged in misconduct with contractual staff while on assignment. In such cases, the prisoner shall be reassigned to a comparable work assignment (ensuring safety, custody, and security concerns are met).

MDOC Policy Directive 05.01.100 (eff. Oct. 1, 2017).

had done. According to Plaintiff, however, Houtz then reheard the Class II misconduct and found Plaintiff guilty. That redetermination, apparently, justified Cline's actions.

8.   On March 9, 2018, Plaintiff again complained to Defendant Morrison. On March 16, 2018, Plaintiff and Morrison met to discuss the situation. Plaintiff told Morrison that all of the Defendants (other than Cline and Knaack) had conspired, through inaction, to unlawfully reclassify Plaintiff in violation of his due process rights. Morrison told Plaintiff that his investigation supported the actions of Chrisman and Houtz. Plaintiff explains that Houtz reviewed Plaintiff's grievances at the first step and Chrisman reviewed Houtz's Step I responses.

Plaintiff alleges that Cline reclassified Plaintiff without due process in violation of the Fourteenth Amendment and retaliated against Plaintiff by terminating Plaintiff from his job assignment and placing him on unemployable status because of Plaintiff's exercise of his First Amendment rights. Plaintiff contends the First Amendment protected his right to refuse to sign the reclassification request and to file grievances. Plaintiff argues the remaining Defendants conspired with Defendant Cline to violate Plaintiff's constitutional rights. Plaintiff seeks compensatory and punitive damages in the amount of $8,000.00 from each Defendant.

## II.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  Here, Plaintiff alleges the Defendants have violated the First and Fourteenth Amendments.

### III. Fourteenth Amendment-Due Process Clause

The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process.  *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).  "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Plaintiff claims that he was wrongfully terminated from his prison job without due process. The Sixth Circuit has consistently found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same). Morever, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 2003 WL 21518730 at *2 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)). Under these authorities, Plaintiff fails to state a due process claim arising from the termination of his prison employment.

Similarly, Plaintiff has no protected liberty or property interest in a particular program or program classification. Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs based on the Fourteenth Amendment. *See, e.g., Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has

a constitutional right to a particular job or to any job"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services).

Accordingly, Plaintiff has failed to state a claim for violation of his Fourteenth Amendment due process rights.

### IV. First Amendment retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

#### A. Termination of Plaintiff's employment

Plaintiff claims that Defendant Cline terminated his employment in retaliation for Plaintiff's filing of grievances and refusal to sign a reclassification request. Even if one considers termination of employment to be "adverse action" and filing grievances and refusing to sign a reclassification request to be "protected conduct," Plaintiff cannot allege that the adverse action was motivated by the protected conduct because the adverse action preceded the protected conduct. Defendant Cline effectively terminated Plaintiff's employment, at the latest, by the reclassification

that Defendant Cline announced on January 10, 2018. Plaintiff did not engage in his alleged "protected conduct" until, at the earliest, January 22, 2018. Accordingly, Plaintiff has failed to state a First Amendment retaliation claim based on the adverse action of termination of his employment.

B. Reclassifying Plaintiff as unemployable

Plaintiff also alleges that his reclassification to unemployable status was in retaliation for his protected conduct of refusing to sign a form requesting reclassification. The reclassification to unemployable status did occur after Plaintiff's allegedly protected conduct. Moreover, Plaintiff's allegations make clear that the reclassification was motivated by Plaintiff's refusal to sign the reclassification request. According to Plaintiff, Defendants Knaack and Cline expressly tied Plaintiff's reclassification to unemployable status to his refusal to sign the reclassification request. Is this enough to state a retaliation claim that survives screening?

A specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). Several Circuit Courts have concluded that interference with prison employment rises to the level of adverse action. *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017); *Gomez v. Vernon*, 255 F.3d 1118, 1127-28 (9th Cir. 2001); *DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000); *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991). The Sixth Circuit has suggested as much in published cases, *see Siggers-El v. Barlow*, 412 F.3d 693 (6th Cir. 2005); *Shehee v. Luttrell*, 199 F.3d 295 (6th Cir. 1999); *Newsom v. Norris*, 888 F.2d 371 (6th Cir. 1989); and has expressly agreed with the conclusion—but in unpublished opinions, *see Walton v. Gray*, 695 F. App'x 144, 146 (6th Cir. 2017); *Pasley v. Conerly*, 345

F. App'x 981, 985 (6th Cir. 2009). In light of that authority, the Court determines that, at this stage of the proceedings, Plaintiff's allegation that Defendants threatened to reclassify Plaintiff as unemployable satisfies the pleading requirement regarding adverse action.

The next question is whether Plaintiff's refusal to sign a reclassification request is protected conduct. "[T]he right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). In the context of prison, of course, the right to speak or not speak is necessarily constrained. The Supreme Court "has repeatedly recognized the need for major restrictions on a prisoner's rights." *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129 (1977). Thus, an inmate "retains [only] those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

The Second Circuit Court of Appeals, in *Burns v. Martuscello*, 890 F.3d 77 (2d Cir. 2018), recently considered whether declining to speak could be protected conduct for a prisoner. The *Burns* panel concluded that refusing to provide false information and refusing to serve as a snitch on an ongoing basis were not inconsistent with the plaintiff's status as a prisoner and, accordingly, were protected by the First Amendment. *Id*. at 88-93; *but see Dixon v. Gonzales*, No. 1:09-cv-172, 2009 WL 3416005, at *3 n.1 (E.D. Cal. Oct. 21, 2009) ("To the extent Plaintiff is attempting to state a claim for retaliation based upon a right to not speak (i.e., not to 'snitch'), that claim also fails."). Here, where MDOC policy provides the prisoner the opportunity to request reclassification, it would seem anomalous to say that a prisoner's decision on whether to request reclassification is "inconsistent with his status as a prisoner."

But what if a prisoner's decision to refuse to request reclassification is based on his facial misreading of MDOC policy? Here, the whole premise of Plaintiff's reclassification retaliation theory rests on the premise that Defendants had no power to reclassify him unless he asked for it. But here MDOC policy, on its face, allows for reclassification when a prisoner lost an earlier job classification because of "behavior related to that assignment." Regardless of whether Plaintiff's misconduct was Class II or Class III, it involved a food service onion and was, therefore, "related to" the classification. Moreover, the classification policy does not by its own terms, or by constitutional principles of due process, limit the MDOC's ability to reclassify for other reasons. By allowing a prisoner to turn his misreading of the classification policy into the basis of a retaliation claim, the Court risks undermining the MDOC's ability to manage prisoner classification. And that is inconsistent with a prisoner's status as such.

Ultimately, however, the Court believes the most prudent course is to address this conundrum in the context of a more fully developed record, and not on screening. The Court will allow the claim to proceed, but not as to all Defendants. Plaintiff contends all of the Defendants conspired to reclassify Plaintiff as unemployable. But his allegations do not support that contention.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy

11

with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of fact regarding Defendant Knaack's communication of the reclassification threat support a plausible suggestion of conspiracy. Plaintiff's allegations of conspiracy with respect to the other Defendants, on the other hand, are conclusory and speculative.

Plaintiff's allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete facts that occurred over a period of time involving numerous individuals. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. He relies entirely on a highly attenuated inference from the mere fact that others subsequently reviewing Defendant Cline's actions permitted those actions to stand. Such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. In light of the far more likely possibility that persons informed of Cline's reclassification of Plaintiff as unemployable after the fact simply did not find it objectionable in light of Plaintiff's misconduct, Plaintiff fails to state a plausible claim of conspiracy.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Houtz, Chrisman, Tory, Van Wyck, Mittelstadt, and Morrison will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Cline and Knaack.

An Order consistent with this Opinion will be entered.


Dated: July 24, 2018　　　　　　　　　/s/ Robert J. Jonker
　　　　　　　　　　　　　　　　　　ROBERT J. JONKER
　　　　　　　　　　　　　　　　　　CHIEF UNITED STATES DISTRICT JUDGE