UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEON ALMOND,

        Plaintiff,

v.

S. CLINE, *et al.*,

        Defendants.

                                      /

Case No. 1:18-cv-641

Hon. Robert J. Jonker

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by a prisoner in the custody of the Michigan Department of Corrections (MDOC). This matter is now before the Court on defendants Cline and Knaack's motion for summary judgment (ECF No. 10).[1]

### I. Background

Plaintiff had a prison work assignment at the food service at the Lakeland Correctional Facility (LCF). He was charged with a Class II misconduct for theft of food, was not permitted to work after the charge, found guilty of a different Class III misconduct related to the food, and then refused to be re-classified for a new work assignment. Plaintiff filed a lawsuit alleging that defendants violated his due process rights because defendant LCF classification director Cline could not reclassify him under the circumstances and that defendants retaliated against him when he refused to exercise his right to request reclassification.

---

[1] The Court notes that defendants' counsel filed a brief which she referred to as both a motion and a brief (ECF No. 10). Defendants' counsel is advised that under W.D. Mich. LCivR 7.1(a) requires parties to file both a motion and a supporting brief.

1

Plaintiff sued eight employees at LCF: Cline; prison counselor J. Knaack; resident unit manager J. Houtz; Inspector T. Chrisman; Food Service Director G. Tory; Assistant Food Service Director Van Wyck; Business Manager S. E. Mittelstadt; and Deputy Warden B. Morrison. Opinion (ECF No. 4, PageID.27).

On initial screening, the Court set out plaintiff's claims:

Plaintiff's allegations cover a three-month period beginning December 20, 2017.  On that date, a corrections officer wrote a Class II misconduct report against Plaintiff for possession of stolen property/theft. The items of property at issue were an onion and some seasoning.  Plaintiff worked for the food service and was classified as a food service worker. Pending his hearing, he was laid-in and was not permitted to work.

On January 2, 2018, Plaintiff was summoned to a hearing on the misconduct charge.  According to Plaintiff, the hearing officer Lieutenant LaMontagne reduced the Class II charge to a Class III charge for possession of a garden onion past the date it should have been consumed.  Plaintiff received a sanction of two days' loss of privileges.  Plaintiff asked the hearing officer to contact staff so Plaintiff could be reinstated to his food service job.  The hearing officer agreed to contact Defendant Cline.

Plaintiff heard nothing for several days. He wrote Defendant Cline inquiring why Cline had not reinstated Plaintiff to his food service job. On January 10, 2018, Cline responded with a memorandum informing Plaintiff that Cline had reclassified him and put him in the work pool for the first available opening. Plaintiff protested, arguing that Cline could not reclassify him under the circumstances.

**Plaintiff's insistence that Cline could not reclassify him lies at the heart of his allegations. Plaintiff's contention is that Cline had no legitimate bases to reclassify him, at least after the misconduct was reduced to a Class III offense, unless Plaintiff himself made a request**.

Opinion at PageID.27-28 (emphasis added).

On initial screening plaintiff's complaint, the Court found that "[t]here is good reason to doubt that Plaintiff is correct in his reading of the MDOC Classification policy." *Id.* at PageID.28.  The Court noted that MDOC Policy Directive 05.01.100 (eff. Oct. 1, 2017) states at

2

¶K that, "A prisoner may be reclassified for any number of reasons." *Id*. at PageID.28-29. The policy directive states at ¶ K.1. that

> Upon Request of the prisoner or the recommendation of any staff member. However, repeated prisoner requests which are deemed inappropriate need not be acted upon.

*Id.* at PageID.28. The policy directive then lists nine more paragraphs of reasons why the MDOC can reclassify a prisoner. *See* MDOC Policy Directive 05.01.100, ¶¶ K.2.-10. *Id*. at PageID.28-29. In addition, the policy directive provides at ¶ Z that, "A prisoner may be reclassified as unemployable . . . for any of the following reasons . . . 5. The prisoner refused to participate in program classification as required by this policy." MDOC Policy Directive 05.01.100, ¶ Z.5.[2]

Despite the explicit language in PD 05.01.100 that "[a] prisoner may be reclassified for any number of reasons," plaintiff contends that in his case, the MDOC can only reclassify him if he requested it. Based on his theory, plaintiff contends that defendants mounted a retaliatory campaign commencing on January 22, 2018, to get him to request a reclassification outside of his previous prison work assignment at the food service.

> 1. On January 22, 2018, Defendant Knaack visited Plaintiff and told Plaintiff to sign a piece of paper to be reclassified. Plaintiff refused. Plaintiff set out to get the papers necessary to file a grievance. Before he could, Defendant Knaack again approached Plaintiff. Knaack told Plaintiff this was his last chance to be reclassified, otherwise Cline would classify Plaintiff as unemployable. Plaintiff again refused to sign.
>
> 2. Plaintiff filed a grievance against Defendants Cline and Knaack for violating the reclassification policy. On January 26, 2018, Plaintiff visited Cline at his office. Cline instructed Plaintiff to sign a reclassification request document so Cline could reclassify Plaintiff, otherwise Cline would classify Plaintiff as unemployable. Plaintiff refused. Cline told Plaintiff that Cline had terminated Plaintiff from his food service assignment. Plaintiff protested that Cline did not have the authority to do so absent a bad work evaluation from Plaintiff's supervisor. Plaintiff again grieved Cline.

---

[2] The Court takes judicial notice of the policy directive. As discussed, *infra*, defendants' brief provided the wrong version of the policy directive.

3

Opinion at PageID.29.

The Court summarized plaintiff's causes of action as follows:

Plaintiff alleges that Cline reclassified Plaintiff without due process in violation of the Fourteenth Amendment and retaliated against Plaintiff by terminating Plaintiff from his job assignment and placing him on unemployable status because of Plaintiff's exercise of his First Amendment rights. Plaintiff contends the First Amendment protected his right to refuse to sign the reclassification request and to file grievances. Plaintiff argues the remaining Defendants conspired with Defendant Cline to violate Plaintiff's constitutional rights. Plaintiff seeks compensatory and punitive damages in the amount of $8,000.00 from each Defendant.

The Court dismissed plaintiff's due process claim and his claims against defendants Houtz, Chrisman, Tory, Van Wyck, Mittelstadt, and Morrison. *Id.* at PageID.33, 38; Order (ECF No. 5). The Court allowed plaintiff to serve the complaint against defendants Cline and Knaack. Opinion at PageID.38. Plaintiff's claim against defendant Cline is that she retaliated against him. *Id.* at PageID.33-37. Plaintiff's claim against defendant Knaack is that he entered into a conspiracy with Cline to retaliate against him. *Id.* Discovery is complete and defendants Cline and Knaack have moved for summary judgment.

## II. Defendants' motion for summary judgment

### A. Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.   Plaintiff's retaliation claim against Classification Director Cline

#### 1.   Legal standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Plaintiff's § 1983 claim involves alleged retaliation in violation of his rights under the First Amendment. The Court recognized that "the whole premise of Plaintiff's reclassification

5

retaliation theory rests on the premise that Defendants had no power to reclassify him unless he asked for it." Opinion at PageID.36. At that same time, the Court recognized that plaintiff's claim is undermined by the MDOC policy which "on its face, allows for reclassification when a prisoner lost an earlier job classification because of 'behavior related to that assignment.'" *Id*.

To prove a First Amendment retaliation claim, plaintiff must establish three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two -- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

A prisoner must be able to prove that the exercise of the protected right was the substantial and motivating factor in the defendant's alleged retaliatory conduct.

> As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech. If an official takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim.

*Nieves v. Bartlett*, -- U.S. --, 139 S. Ct. 1715, 1722 (2019) (internal quotation marks and brackets omitted).

### 2. Plaintiff's grievance was not protected conduct

The Court found that the plaintiff's grievance filed on January 22, 2018 was not protected conduct:

> Plaintiff claims that Defendant Cline terminated his employment in retaliation for Plaintiff's filing of grievances and refusal to sign a reclassification request. Even if one considers termination of employment to be "adverse action" and filing grievances and refusing to sign a reclassification request to be "protected conduct," Plaintiff cannot allege that the adverse action was motivated by the

6

> protected conduct because the adverse action preceded the protected conduct. Defendant Cline effectively terminated Plaintiff's employment, at the latest, by the reclassification that Defendant Cline announced on January 10, 2018. Plaintiff did not engage in his alleged "protected conduct" until, at the earliest, January 22, 2018. Accordingly, Plaintiff has failed to state a First Amendment retaliation claim based on the adverse action of termination of his employment.

*Id.* at PageID.33-34.[3]

### 3. Question raised on initial screening

The question before the Court is whether plaintiff's refusal to sign a reclassification request or waiver was "protected conduct" which could form the basis for his retaliation claim. Opinion at PageID.35. On initial screening, the Court suggested two theories. On the one hand, plaintiff may have retained the First Amendment right to request reclassification, observing that "where MDOC policy provides the prisoner the opportunity to request reclassification, it would seem anomalous to say that a prisoner's decision on whether to request reclassification is 'inconsistent with his status as a prisoner.' " *Id.*

On the other hand, plaintiff's claim that he retained the First Amendment right to request reclassification is based on his misreading of MDOC policy.

> [H]ere MDOC policy, on its face, allows for reclassification when a prisoner lost an earlier job classification because of "behavior related to that assignment." Regardless of whether Plaintiff's misconduct was Class II or Class III, it involved a food service onion and was, therefore, "related to" the classification. Moreover,

---

[3] In the January 10, 2018 Memorandum (ECF No. 12-1, PageID.107), defendant Cline advised plaintiff as follows:

"In your kite dated 1-9-18 you ask about the job you had in food service. You were laid in pending the outcome of a misconduct on 12-12-17. At hearing on docket dated 1-2-18 your charge was reduced from a Class II to a Class III and you were found guilty of contraband for having an onion and some unknown substance in your area of control. Policy 05.01.100 states:

> . . . a prisoner who is charged with any misconduct may be temporarily suspended (i.e., 'laid in') from his/her assignment pending the misconduct hearing . . . . If the prisoner is found guilty at the initial misconduct hearing, s/he shall be considered for reclassification in accordance with this policy. . .

You were found guilty of the misconduct, even though it was reduced to a Class III. I have considered you for reclassification and have placed you into the institutional needs pool. You will be hired, by pool date, into the first available opening."

> the classification policy does not by its own terms, or by constitutional principles of due process, limit the MDOC's ability to reclassify for other reasons. By allowing a prisoner to turn his misreading of the classification policy into the basis of a retaliation claim, the Court risks undermining the MDOC's ability to manage prisoner classification. And that is inconsistent with a prisoner's status as such.

*Id.* at PageID.36. The Court did not dismiss plaintiff's claim on initial screening because it wanted the parties to develop a factual record. *Id.*

### 4. Summary of factual record

Defendants provided 10 pages of plaintiff's deposition testimony which summarized plaintiff's interpretation of the MDOC policy directives and plaintiff's opinion that defendant Knaack, as a prison counselor, does not have authority to reclassify inmates. *See* Defendants' Brief at PageID.55-56. In support of their motions, defendants provided and cited the wrong version MDOC Policy Directive 05.01.100 (*i.e.*, the version effective March 1, 2019, not the version effective in 2018). However, the policies which support defendants' arguments are found in both versions of the policy directive.

Defendants also provided a copy of the Program Classification Report (ECF No. 10-4, PageID.84). This appears to be part of the "re-classification paperwork" which plaintiff refused to sign. Counselor Knaack signed the report on January 22, 2018, the same day that plaintiff refused to sign it. PageID.84. Where plaintiff's signature is supposed to appear on the report is written "Refused to sign," with classification director Cline signing the report four days later on January 26, 2018. *Id.* The following statement appears in the "COMMENTS / CLASSIFICATION REVIEW SUMMARY" section:

> PRISONER REFUSED TO PARTICIPATE IN THE CLASSIFICATION PROCESS.
>
> Placed on unemployable status for refusing to participate in the classification process.

8

*Id.*

In his response to defendants' motion for summary judgment, plaintiff included another document he refused to sign, this being a copy of his "Assignment Waiver Form" dated January 26, 2018, which indicated that plaintiff was not given a work assignment because "Almond Refused To Participate In The Classification Process." *See* Waiver (ECF No. 12-1, PageID.125).

### 5. Discussion

Plaintiff claims that defendant Cline retaliated against him because plaintiff had a First Amendment right to request reclassification and his refusal to be reclassified for a new work assignment was protected conduct. The Court rejects this claim. In *Vanzant v. Oja*, No. 2:10-cv-71, 2010 WL 4553655 (W.D. Mich. Nov. 3, 2010), this Court held that a prisoner's refusal to accept a prison work assignment is not constitutionally protected conduct which can form the basis for a First Amendment retaliation claim:

> Plaintiff [prisoner] also claims that Defendant [prison classification director] Oja retaliated against him when she placed him on unemployable status. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. . . [A] plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L.Ed.2d 471 (1977)). In this case, Plaintiff was placed on unemployable status because he refused a work assignment. Such an action does not constitute protected conduct. Therefore, Plaintiff's retaliation claim is properly dismissed.

*Vanzant*, 2010 WL 4553655 at *3.

Here, plaintiff's refusal to participate in the reclassification process was tantamount to the refusal to accept a work assignment. For this reason, his refusal to participate in the reclassification process was not protected conduct. *Id*. While MDOC Policy Directive 05.01.100

9

allows a prisoner to request a reclassification (with the caveat that "repeated prisoner requests which are deemed inappropriate need not be acted upon"), it is clear from the balance of the Policy Directive that it is the MDOC, not the prisoner, who controls the reclassification process. *See Ziegler v. Martin*, 47 Fed. Appx. 336, 338 (6th Cir. 2002) (the MDOC has a "legitimate penological objective of not rewarding prisoners who refuse work assignments with more privileges than those who accept prison employment"). Accordingly, plaintiff's retaliation claim fails and defendant Cline's motion for summary judgment should be granted.

### C. Conspiracy claim

Construing the complaint broadly, the Court concluded that plaintiff alleged a conspiracy claim against defendant Counselor Knaack. Plaintiff's claim that defendants violated his civil rights by conspiring to retaliate against him fails because his underlying constitutional claim of retaliation against defendant Cline failed. As one court explained:

> A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007). In order to prove a civil conspiracy, a plaintiff must demonstrate that "(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the Plaintiffs of their constitutional rights, and (3) an overt act was committed." *Id.* (citation omitted). However, a civil conspiracy claim is dependent on the underlying constitutional claim. *See Scott v. Stone*, 254 F. App'x 469, 474-75 (6th Cir. 2007) (citing *Torress-Rosado v. Rotger-Sabat*, 335 F.3d at 1, 14 (1st Cir. 2003) ("To demonstrate conspiracy under § 1983, plaintiff must show an actual abridgment of some federally-secured right."); *Vaden v. Village of Maywood*, 809 F.2d 361, 366 (7th Cir. 1987) ("To state a claim for relief under [§ 1983], [plaintiff] must allege no [sic] only that the defendants conspired under color of state law to deprive her of her constitutional rights, but also that she was in fact deprived of those rights.")).

*Ash v. Boone County, Kentucky*, No. CIV.A. 09-190-DLB, 2011 WL 4431820 at *6, n. 6 (E.D. Ky. Sept. 22, 2011). Accordingly, defendants should be granted summary judgment on the conspiracy claim.

### D. Qualified Immunity

Defendants also claim qualified immunity. Under the affirmative defense of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

> A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. -- , ---, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (internal quotation marks and alteration omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). Put simply, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

*Mullenix v. Luna*, -- U.S. --,136 S. Ct. 305, 308 (2015). Thus, the doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Carroll v. Carman*, 574 U.S. 13, 17 (2014).

When a defendant raises the issue of qualified immunity on summary judgment, "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity." *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). "The defendant bears the initial burden of coming forward with facts to suggest that he acted within the scope of his discretionary authority during the incident in question." *Id.* Once this is accomplished, "the burden shifts to the plaintiff to establish that the defendant's conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct." *Id.* To meet his burden on summary judgment, a

11

plaintiff must show (1) that a constitutional right was violated, and (2) that the right was clearly established at the time of the violation. *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). The court may exercise its discretion to decide which prong of the test to address first in light of the circumstances of the case. *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir 2011), citing *Pearson v. Callahan*, 555 U.S. 223, 232-33 (2009).

Here, defendants contend that they are entitled to qualified immunity for two reasons. First, "[d]efendants had the right to reclassify the plaintiff because MDOC policy allows for reclassification when a prisoner lost his job due to behavior related to the assignment." Defendants' Brief at PageID.60. Second, defendants had the right to reclassify plaintiff "because MDOC policy allows for reclassification to unemployable status if a prisoner refuses to participate in the classification process." *Id.*[4]

Defendants contend that they are entitled to qualified immunity from plaintiff's retaliation claim because it was not clearly established that plaintiff's refusal to participate in the reclassification process was "protected conduct" under the First Amendment.

> The Defendants had no way of knowing if refusing to sign reclassification paperwork qualified was a protected right. The fact that even the Court could not determine if this was a protected right shows just how unclear this would be to the Defendants. There was no clearly established right at the time of Plaintiff's refusal to sign that would have indicated to the Defendants that their conduct could have violated Plaintiff's rights. Therefore, the Defendants are entitled to qualified immunity.

*Id.* at PageID.61.

"[A] public official's retaliation against an individual exercising his or her First Amendment rights is a violation of § 1983." *Barrett v. Harrington*, 130 F.3d 246, 264 (6th Cir. 1997). Here, plaintiff claims that he retained a First Amendment right to refuse to participate in a

---

[4] As discussed, while defendants cited the wrong version of the policy directive, the relevant policy directive contained the same rules regarding reclassification.

12

reclassification process which he did not request. As discussed, plaintiff's "right to refuse" to participate in the reclassification process was not protected conduct. Defendants did not violate plaintiff's First Amendment rights because plaintiff did not engage in protected conduct. *See Thaddeus-X*, 175 F.3d at 394. Accordingly, defendants are also entitled to summary judgment on basis of qualified immunity.

### III. Recommendation

For these reasons, I respectfully recommend that defendants Cline and Knaack's motion for summary judgment (ECF No. 10) be **GRANTED** and that this action be **TERMINATED**.

Dated: February 14, 2020          /s/ Ray Kent
                                   United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).